IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Wendi M.,[1]                                              No. 1:21-cv-01828-HZ

                    Plaintiff,                            OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


Katherine Eitenmiller
Katie Taylor
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette St
Eugene, OR 97401

        Attorneys for Plaintiff


Renata Gowie
Civil Division Chief
District of Oregon

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1000 SW Third Avenue, Suite 600
Portland, OR 97204

Justin L. Martin
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant


HERNÁNDEZ, District Judge:

      Plaintiff Wendi M. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

**PROCEDURAL BACKGROUND**

      Plaintiff applied for DIB on June 27, 2019, alleging an onset date of January 17, 2019. Tr. 15.[2] Her application was denied initially and on reconsideration. Tr. 15.

      On March 16, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 15. On May 12, 2021, the ALJ found Plaintiff not disabled. Tr. 12. The Appeals Council denied review. Tr. 1.

**FACTUAL BACKGROUND**

      Plaintiff originally alleged disability based on arthritis, an amputation, diabetic neuropathy, diabetes, nerve root occlusion, gastro sensitivity, and urinary incontinence. Tr. 206. At the time of her alleged onset date, she was 53 years old. Tr. 70. She has a high school education and past relevant work experience as an accounting clerk. Tr. 207, 27.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10-1.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her alleged onset date. Tr. 18. Next, at steps two and three, the ALJ determined that

Plaintiff has the following severe impairments: "diabetes type II with hyperglycemia; below the

knee amputation (BKA) of the left lower extremity with prosthesis; diabetic neuropathy; and

obesity." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or

medically equal the severity of a listed impairment. Tr. 20. At step four, the ALJ concluded that

Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §

404.1567(b) with the following limitations:

> [S]he can only stand and/or walk with normal breaks for a total of 2 hours in an 8
> hour workday; she can only occasionally climb ramps/stairs; never climb ladders,
> ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl;
> and must avoid exposure to vibrations and hazards, such as dangerous machinery
> and unprotected heights.

Tr. 21. The ALJ concluded that Plaintiff could perform her past relevant work as an accounting

clerk. Tr. 27. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 28.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) rejecting her subjective symptom testimony, and (2) finding unpersuasive the medical opinion of Mike Wulf, PA-C. Pl. Op. Br. 4, ECF 16. For the following reasons, the Court affirms the ALJ's decision.

## I.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and

convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff has worked in several fields. She worked most recently as a supply specialist II at a prison, between August 2010 and January 2019. Tr. 233. Between April 2008 and August 2010, she worked as a correctional officer. Tr. 233. Between October 2006 and September 2008, she worked as a gas station attendant. Tr. 233. Between 2005 and October 2007, she worked in accounts receivable. Tr. 233.

Plaintiff testified that she could no longer work due to the effects of her below-the-knee amputation ("BKA"). Tr. 51. In 2017, Plaintiff underwent an elective amputation of part of her left leg due to "chronic intractable pain and left lower extremity deformity." Tr. 335. In May 2019, Plaintiff underwent a stump revision surgery to address painful recurrent ulcers. Tr. 335-36.

Plaintiff's claimed limitations center on the effects of her BKA.[3] In a function report completed in September 2019, she stated that she had trouble walking, sitting, standing, stooping, and bending. Tr. 247. She reported that she needed to rest multiple times per day. Tr. 248. She reported needing to move during the night due to discomfort. Tr. 248. She required a chair for bathing. Tr. 249. She occasionally needed help getting onto and up from the toilet. Tr. 249. She reported being able to cook her meals daily. Tr. 249. She reported being able to operate a riding lawn mower, but that when she did laundry her husband had to carry the laundry. Tr. 250. She reported being able to go out alone as long as she had a cane. Tr. 250. She went shopping. Tr. 250. Plaintiff did not report difficulty handling her finances or dealing with stress or changes in routine. Tr. 251, 253.

In March 2020, Plaintiff reported "severe pain in hips & leg." Tr. 268. This pain was present 24 hours per day. Tr. 268. She reported being able to stand or walk for 10-20 feet without pain. Tr. 268. She reported being able to sit for 30-40 minutes without pain. Tr. 268. Plaintiff reported taking gabapentin and hydromorphone for her pain. Tr. 269. She also reported that heat and elevating her legs helped manage her pain. Tr. 269.

At the hearing, Plaintiff testified that she took ibuprofen and Dilaudid (hydromorphone) to manage her pain. Tr. 52. She also testified that she took her prosthetic off after about three to four hours to air her leg and prevent moisture from building up and causing blisters. Tr. 51, 55. She stated that she kept it off "for an hour or so." Tr. 51. She testified that after she took her prosthetic off, she elevated her leg to keep it from swelling so that she could get her prosthesis

---

[3] Plaintiff argues that other physical conditions she alleged (diabetes, diabetic neuropathy, and obesity) "contribute to her overall condition" and that "the combination of her impairments" supports a finding of disability. Pl. Br. 19. The ALJ considered the effects of these conditions in his analysis. Tr. 25. Plaintiff does not identify any errors in the ALJ's reasoning.

back on. Tr. 51. She did not testify that elevation was a pain management technique or that the swelling bothered her for any reason other than that it made it difficult to put her prosthetic back on. Tr. 51. She worried that it would "freak a lot of people out" if she tried to do this in a work setting. Tr. 51.

The ALJ discounted Plaintiff's testimony on two related key points. First, the ALJ found that "[t]he medical evidence of record does not support the claimant's testimony that she can only wear her prosthetic for 3 or 4 hours a day." Tr. 23. Plaintiff correctly points out that the ALJ misinterpreted her testimony about how long she could wear her prosthesis at a time. Pl. Br. 18. She testified that she wore her prosthesis for three to four hours at a time, not three to four hours per day as the ALJ stated. Tr. 51. Second, the ALJ stated that "[t]he claimant's testimony regarding elevating her left leg BKA is not supported by the medical evidence of record[.]" Tr. 24. The feasibility of elevation in the work setting was a major focus during the examination of the vocational expert ("VE"). Tr. 64-66. Plaintiff argues that the ALJ offered no evidence to undermine her testimony that she needed to elevate her leg to prevent swelling in order to put her prosthesis back on. Pl. Br. 18. The ALJ discounted Plaintiff's testimony on the two key points based on (1) inconsistency with some of Plaintiff's activities, and (2) inconsistency with the objective medical evidence of record. Tr. 22-25.

In addition, the ALJ relied on Plaintiff's course of treatment, namely her sparing use of hydromorphone, in concluding that Plaintiff's pain would not prevent her from working. Tr. 23.

A. Activities of Daily Living

The ALJ found that some of Plaintiff's reported activities of daily living conflicted with her allegations of debilitating symptoms. Tr. 22-24. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to support an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722-23. In addition, the claimant's ability to perform limited basic daily activities is not a clear and convincing reason to reject a claimant's testimony. *See id.* at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [her] credibility as to [her] overall disability. One does not need to be utterly incapacitated in order to be disabled.") (internal quotation omitted).

The ALJ highlighted several of Plaintiff's activities that he deemed incompatible with her testimony. Plaintiff drove three hours to attend her medical appointments. Tr. 22, 57. She testified that her husband usually drove and that she elevated her feet during the drive. Tr. 57. While serving as her mother's caregiver, Plaintiff once drove her to a doctor's appointment in California. Tr. 22, 44-45. She and her husband drove five days from Oregon to Alabama to visit her husband's brother in December 2020, sharing the driving. Tr. 22, 45-46. Plaintiff testified that she removed her prosthesis when her husband was driving. Tr. 46. In October 2019 she spent the weekend painting her house and was sore but did not require assistance walking or

report blisters or skin irritation. Tr. 24, 502. The ALJ found that these activities undermined Plaintiff's testimony about the severity of her symptoms. Tr. 23-24.

As discussed above, the ALJ erred in his interpretation of Plaintiff's testimony about how long she could wear her prosthesis at a time. *Supra* at 8. To the extent the ALJ's error affected his analysis of Plaintiff's activities, that error was harmless. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (holding that "the reviewing court can determine from the circumstances of the case that further administrative review is needed to determine whether there was prejudice from the error" and that "where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate") (internal quotations omitted). First, as Defendant points out, Plaintiff engaged in strenuous activities such as painting her house all weekend. Def. Br. 9, ECF 17.

Second, the ALJ reasonably relied on Plaintiff's long drives in discounting her testimony about the need to remove her prosthesis and elevate her leg for an hour every three to four hours. With respect to the three-hour drives to her medical appointments, Plaintiff testified that she "usually" scheduled her appointments for the morning. Tr. 57. She stated, "it could have been that I hadn't been up and moving much so there might not have been a whole lot of swelling" at her medical appointments. Tr. 57. This testimony is speculative and the ALJ reasonably discounted it. *See* Tr. 22. Plaintiff did not testify that she elevated her leg during her five-day drive to Alabama, only that she removed her prosthesis. Tr. 46. Plaintiff also testified that she drove her mother to California, from which the ALJ reasonably concluded that she did all of the driving herself. Tr. 45, 22. The ALJ reasonably found that Plaintiff's activities were inconsistent with her testimony regarding the need to remove her prosthesis and rest and elevate her leg for an hour every three to four hours to prevent swelling.

B.  Objective Medical Evidence

The ALJ found that Plaintiff's subjective symptom testimony was "not entirely consistent with the medical evidence" of record. Tr. 22. An ALJ may discount a claimant's testimony based on a lack of support from objective medical evidence, but this may not be the sole reason. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (holding that "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant's testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted); *Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) (stating that "[b]ecause the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony."). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

The ALJ discounted Plaintiff's testimony regarding the need to remove her prosthetic and elevate her leg for an hour because it was not supported by the medical record. Tr. 24. The ALJ focused on a consistent lack of swelling at Plaintiff's medical exams. Tr. 24. When Plaintiff reported wearing her prosthesis for eight hours per day, seven days a week, an exam in September 2019 found no change in the volume and shape of her stump. Tr. 499. Notes from an appointment in January 2020 recorded good control of volume and did not record any swelling. Tr. 722. The ALJ noted that Plaintiff testified that the appointment was a three-hour drive away.

Tr. 24. An appointment in July 2020 likewise showed no swelling in Plaintiff's left leg. Tr. 726.

At an appointment in March 2020, one of Plaintiff's providers did observe swelling in her right

leg (the one without an amputation) and that it did not change with elevation. Tr. 24, 779. The

ALJ also noted that none of Plaintiff's medical providers documented elevation as a

recommendation other than during a short period several weeks before her revision surgery. Tr.

24, 459.

      Plaintiff testified that her husband "usually" drove her to her appointments, and she

elevated her feet during the drive in order to prevent swelling. Tr. 57. She also testified that she

"usually" made her appointments in the morning, so she was not active for long before her

appointments and that this likely reduced the possibility of swelling. Tr. 57. The ALJ expressed

skepticism about this testimony. Tr. 22. As discussed above, he could reasonably discount it

because it was speculative. He also noted that Plaintiff "acknowledged she has not had any

'urgent' issues in the last year that would require her to go into the doctor's office." Tr. 22, 58.

      Because the ALJ properly found that Plaintiff's activities provide a basis to discount her

testimony regarding resting and elevating her leg, the ALJ could also properly rely on the largely

unremarkable findings in the medical record in discounting that testimony. Medical records

documenting no swelling of Plaintiff's left leg on multiple occasions after she wore her

prosthesis for more than three hours to arrive at medical appointments is a clear and convincing

reason to discount her testimony regarding swelling and the need for elevation. *See Smartt v.*

*Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) (holding that ALJ properly discounted claimant's

testimony regarding use of mobility aids where notes from multiple medical appointments made

no mention of claimant using a mobility aid).

In challenging the ALJ's conclusion on this point, Plaintiff primarily offers an alternative interpretation of the medical evidence of record. Pl. Br. 15-18. As discussed above, Plaintiff correctly observes that the ALJ misinterpreted her testimony about how long she can wear her prosthesis at a time. Pl. Br. 18. However, Plaintiff does not establish that the ALJ's interpretation of the objective medical evidence was erroneous. The ALJ's interpretation is reasonable and supported by substantial evidence, and therefore it must be affirmed. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

C. Course of Treatment

The ALJ credited Plaintiff's allegations of pain but did not find that Plaintiff's pain would interfere with her ability to work. Tr. 23. Relevant factors for the ALJ to consider when evaluating symptom testimony include "[t]he type, dosage, effectiveness, and side effects of any medication" the plaintiff takes to alleviate symptoms. 20 C.F.R. § 404.1529(c)(3)(iv). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). *See also Perry H. v. Saul*, No. 1:19-CV-00050-AA, 2020 WL 2764614, at *5 (D. Or. May 27, 2020).

At the hearing, Plaintiff reported taking ibuprofen and Dilaudid. Tr. 52. She testified that she was using Dilaudid "three to four times a week lately" because her "back ha[d] flared up really bad" and her right leg (the one that was not amputated) would "spasm and go out from underneath" her. Tr. 52. The ALJ acknowledged that "the records also support continued pain[.]" Tr. 23. The ALJ concluded that Plaintiff's use of hydromorphone (Dilaudid) was "[s]paring." Tr. 23. He relied on a May 2019 medical record in which Plaintiff reported using "about 30 pills every 3 months." Tr. 337. He also relied on a March 2018 medical record in which Plaintiff's physician reported that she used hydromorphone "sparingly maybe 2 per week primarily when

she is working." Tr. 370. Finally, he relied on an October 2018 medical record that likewise reported that Plaintiff took hydromorphone "sparingly." Tr. 613. The ALJ also noted that Plaintiff consistently presented in no distress or no acute distress at her medical appointments. Tr. 23.

When asked at the hearing whether her pain would interfere with her ability to work, Plaintiff did not testify that it would; rather, she testified that she needed to remove her prosthetic and elevate her leg during the day to prevent swelling, and she did not believe it would be feasible to do so in a work setting. Tr. 50-51. The ALJ observed that while Plaintiff testified that she was not "100% clear" [sic] while taking Dilaudid, she also testified that she believed she was mentally able to do her past work in accounts receivable. Tr. 22, 53. The ALJ reasonably concluded that Plaintiff's pain would not prevent her from working, and that her medications would not interfere with her ability to work. Tr. 22-23.

Plaintiff argues that she requires pain medication sparingly because she limits her activities as needed and takes breaks. Pl. Br. 17-18. The ALJ's RFC provides that Plaintiff can only stand for two hours per day in an eight-hour workday. Tr. 21. Furthermore, the ALJ found that Plaintiff could perform her past relevant work as an accounting clerk, which is a sedentary occupation. Tr. 27. Other than the need to remove her prosthesis and elevate her leg to prevent swelling, Plaintiff does not argue that this finding is inconsistent with her needs. Pl. Br. 18. The ALJ did not err in evaluating Plaintiff's testimony about her pain.

Ultimately, the ALJ's decision to discount Plaintiff's testimony is supported by substantial evidence despite his misinterpretation of her allegations about how long she could wear her prosthesis at a time. The ALJ did not fully reject Plaintiff's testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008). To the extent that the ALJ's

error affected his analysis of Plaintiff's activities of daily living, that error was harmless. The ALJ properly found that Plaintiff's testimony regarding the need to remove her prosthesis and elevate her leg for an hour every three to four hours was inconsistent with some of her activities and was not supported by the objective medical evidence. The ALJ provided clear and convincing reasons to discount Plaintiff's testimony.

The ALJ's error was also harmless because it does not affect his conclusion that Plaintiff could perform her past relevant work as an accounting clerk. The VE testified that Plaintiff could remove her prosthesis in the middle of the workday. Tr. 65. The VE stated that if Plaintiff had her own cubicle and had her prosthetic off for less than an hour, this would be tolerated, but that elevation "was very prohibitive." Tr. 65. The VE also stated that if Plaintiff had to elevate her leg for 30 minutes or less, that could be accommodated by the lunch hour. Tr. 66. As the ALJ did not err in discounting Plaintiff's testimony regarding elevation, he did not err in concluding that Plaintiff could work as an accounting clerk.

## II.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred in discounting the medical opinion of Mike Wulf, PA-C. Pl. Br. 5. New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Id. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor considers the degree of relevant

"objective medical evidence and supporting explanations" relied on by a medical source to

support their opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor

analyzes how consistent the medical opinion is with other medical and non-medical evidence in

the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

   Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the

medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2).

In doing so, the ALJ is required to explain how supportability and consistency were considered

and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2),

416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the

same issue are both equally well-supported . . . and consistent with the record . . . but are not

exactly the same," the ALJ is required to explain how the other factors were considered. 20

C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot

reject an examining or treating doctor's opinion as unsupported or inconsistent without providing

an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

Cir. 2022). However, if substantial evidence supports the ALJ's analysis, then the ALJ's

conclusion must be upheld. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he

key question is not whether there is substantial evidence that could support a finding of

disability, but whether there is substantial evidence to support the Commissioner's actual finding

that claimant is not disabled.").

   Here, the ALJ considered medical opinions from three sources: PA Wulf, and the state

agency's medical consultants, Thomas Davenport, M.D., and Clarence Ballard, M.D. Tr. 25-27.

The ALJ found the state agency's consultants persuasive and PA Wulf's opinion "not fully

persuasive." Tr. 26. Plaintiff challenges only the ALJ's treatment of PA Wulf's opinion. Pl. Br. 5.

PA Wulf treated Plaintiff regularly during the relevant period, and his appointment notes indicate that Plaintiff's amputation limited her ability to work. In January 2019, PA Wulf stated that Plaintiff needed to stop working for at least one month. Tr. 473. In February 2019, he stated that Plaintiff needed to remain off work for approximately six weeks. Tr. 469. In March 2019 he stated that Plaintiff "will not be able to return to her current occupation and most likely she'll be medically retired. I feel that the 12 hours a day standing with her prosthesis is probably too much." Tr. 463. In June 2019 (after Plaintiff had her stump revision), PA Wulf stated that Plaintiff "cannot continue her job full-time because of the constant walking" and that she "needs to find a more sedentary job." Tr. 453. In July 2019, he stated that Plaintiff "is still unable to return to work" and he "doubt[ed] that she [would] be able to perform her previous duties due to walking on concrete floors 10 hours a day with a prosthetic leg." Tr. 447. In August 2019, he stated that Plaintiff "should not return to work 10 hours a day on concrete" and that it was "better for her to find another job." Tr. 443. In October 2019, PA Wulf stated that Plaintiff was "totally disabled from her line of work," would not be able to "return to work full time standing or walking on concrete," and that "[a]t some point in the future she could be retrained for a more sedentary job." Tr. 517. Finally, in January 2020, he stated that Plaintiff was "still disabled from work" because he did "not believe that she will be able to return to work actively walking all day." Tr. 513. He completed a work-release form indicating that Plaintiff could not return to work and that her condition was permanent. Tr. 731.

The ALJ discounted PA Wulf's opinion for several reasons. First, the ALJ stated that it "offer[ed] only conclusory statements, instead of function-by-function assessments that inform

the undersigned what specific abilities the claimant retains." Tr. 26. Plaintiff argues that a

medical opinion need not provide a function-by-function assessment. Pl. Br. 10. Plaintiff is

correct that treatment records—which often will not include such an assessment—are valid

evidence to be considered. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014)

(holding that checkbox forms merited weight because they were consistent with the treatment

notes). Even if this was not a valid basis to discount PA Wulf's opinion, the ALJ validly

discounted his opinion for other reasons.

Second, the ALJ discounted PA Wulf's opinion because he concluded that it was

"specifically referring to claimant's job at the prison where she was on her feet most of the day"

and that on that point it was "not inconsistent [with] the findings of Dr. Davenport and Dr.

Ballard, who limited the claimant to only two hours total standing/walking." Tr. 26. The ALJ's

interpretation of PA Wulf's opinion is reasonable. As Defendant points out, PA Wulf's treatment

notes repeatedly reference Plaintiff's "current occupation" and state that she should not stand 10

or 12 hours per day or walk on concrete for hours at a time. Def. Br. 5 (citing Tr. 463, 453, 530,

443, 447, 524, 520, 517, 730, 513, 723). PA Wulf opined several times that Plaintiff needed a

sedentary job or a different line of work. Tr. 453, 443, 517. The ALJ reasonably concluded that

PA Wulf's statements about Plaintiff's ability to work only applied to her then-current

occupation at a prison, which required walking and standing for long periods of time. The ALJ

accordingly did not find that Plaintiff could perform that work: he found that Plaintiff could

perform her past relevant work as an accounting clerk, which is a sedentary job. Tr. 27.

Third, the ALJ concluded that PA Wulf's opinion was "not supported by the last

assessment by Dr. Hinz, with whom he managed the claimant's BKA care." Tr. 26. The ALJ

stated that "Dr. Hinz basically released the claimant from care in July 2020, when he instructed

her to return as needed." Tr. 26. The progress notes for Plaintiff's July 2020 appointment with Dr. Hinz reflect that Plaintiff "had been doing better in terms of her overall soft tissue envelope" and was wearing her prosthetic for seven or eight hours per day. Tr. 724. They also reflect that Plaintiff recently had a blister on her stump, which improved before her appointment, and that she had distal stump pain after wearing her prosthetic for seven or eight hours. Tr. 724. The progress notes further state that Plaintiff appeared "reasonably healthy" and presented no acute distress, but had "a mildly antalgic gait." Tr. 726. Her stump was well-healed but with some tenderness. Tr. 726. Her knee had a good range of motion. Tr. 726. Dr. Hinz opined that Plaintiff should see her orthotist for some adjustments and then follow up with him (Dr. Hinz) as necessary. Tr. 26. This progress note is susceptible of more than one reasonable interpretation, as it indicates both positive and negative health factors for Plaintiff and is silent on functional limitations. The ALJ permissibly interpreted it as "basically releas[ing]" Plaintiff from care and therefore inconsistent with PA Wulf's opinions. Tr. 26.

Fourth, the ALJ concluded that PA Wulf's opinion prior to Plaintiff's stump revision surgery was not persuasive because it "was provided in the course of treatment of a small residual wound, and was offered with the intent to be temporary," and "does not reflect the claimant's subsequent improvement with revision surgery, nor Mr. Wulf's own change in opinion based thereon[.]" Tr. 26-27. Plaintiff argues that the ALJ erred because he failed to consider the full adjudicatory period and not merely the most recent treatment records. Pl. Br. 8-9. Plaintiff relies on *Smith v. Kijakazi*, 14 F.4th 1108 (9th Cir. 2021). *Smith* is the latest decision in a line of cases acknowledging that symptoms fluctuate over time for many individuals with mental health conditions. *Id.* at 1115. Plaintiff challenges the ALJ's consideration of her physical conditions, and the Court does not believe that *Smith* applies here. Even if it did, the ALJ's

decision to discount PA Wulf's opinion was not erroneous because the ALJ reasonably concluded that the opinion referred only to Plaintiff's prior occupations that required her to stand for a significant period of time. The ALJ did not find that Plaintiff could perform those occupations. Accordingly, any error was harmless. *McLeod*, 640 F.3d at 888. The ALJ did not err in discounting PA Wulf's opinion.

In sum, the ALJ did not harmfully err in discounting PA Wulf's medical opinion or Plaintiff's subjective symptom testimony. Substantial evidence supports the finding that Plaintiff is not disabled because she can perform her past relevant work as an accounting clerk.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:   January 18, 2023      .


_____
MARCO A. HERNÁNDEZ
United States District Judge

20 – OPINION & ORDER